# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

| | | |
|---|---|---|
| **CHARLENE E. WALTON,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:11-cv-01384-AC |
| | ) | |
| v. | ) | **FINDINGS AND RECOMMENDATION** |
| | ) | |
| **CAROLYN W. COLVIN,**[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

---

[1] Subsequent to the filing of the Complaint in this case, the term of Michael J. Astrue, Commissioner of Social Security, expired. His successor is substituted in the caption pursuant to Federal Rule of Civil Procedure 25(d).

**ACOSTA, United States Magistrate Judge.**

Plaintiff Charlene Walton ("Walton") seeks judicial review of the Social Security Commissioner's final decision denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401–33. This Court has jurisdiction under 42 U.S.C. § 405(g). The Commissioner's decision should be affirmed.

## I.    BACKGROUND

Born in 1952, Ms. Walton filed a DIB application on April 28, 2008. Tr. 112. She initially alleged disability beginning September 15, 2002,[2] due to heart attack, sleep apnea, anxiety, depression, migraine headaches, cataract of the left eye, back problems, left shoulder problems, osteoarthritis, and degenerative bone disease. Tr. 112, 137. The Commissioner denied this application initially and upon reconsideration, Tr. 64–67, 71–73., and an Administrative Law Judge ("ALJ") held a hearing on March 50, 2010. Tr. 33–61. The ALJ found Ms. Walton not disabled on March 19, 2010. Tr. 18–27. The Appeals Council accepted additional evidence into the record on October 5, 2010, Tr. 4, but declined review of the ALJ's decision. Tr. 1–4. This action made the ALJ's decision the final decision of the Commissioner. 20 C.F.R. § 410.670a.

## II.    DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps to determine disability under the meaning of the Act. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

---

[2] At the hearing, Ms. Walton amended her alleged onset date to April 4, 2006. Tr. 35–36.

FINDINGS AND RECOMMENDATION, Page 2

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If she is, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve-month durational requirement. If the claimant does not have such a severe impairment, she is not disabled. 20 C.F.R. §§ 404.1509; 404.1520(a)(4)(ii).

At step three, the ALJ determines whether the severe impairment meets or equals an impairment "listed" in the Commissioner's regulations. If it does, the claimant is disabled, 20 C.F.R. § 404.1520(a)(4)(iii).

If adjudication proceeds beyond step three, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments. 20 C.F.R. § 404.1520(e); Social Security Ruling ("SSR") 96–8p.

At step four, the ALJ uses this information to determine if the claimant can perform her past relevant work. If the claimant can perform her past relevant work, she is not disabled. 20 C.F.R. § 404 .1520(a)(4)(iv). If the ALJ finds that the claimant's RFC precludes performance of her past relevant work the ALJ proceeds to step five.

At step five, the Commissioner must determine if the claimant is capable of performing work existing in the national economy. If the claimant cannot perform such work, he is disabled. 20 C.F.R. §§ 404 .1520(a)(4)(v); 404.1520(a)(4)(v); *Yuckert*, 482 U.S. at 142; *Tackett*, 180 F.3d at 1099.

The initial burden of establishing disability rests upon the claimant. *Yuckert*, 482 U.S. 137, 146 n.5; *Tackett*, 180 F.3d at 1098. If the sequential disability analysis reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d. at 1100. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1520(g); *Tackett*, 180 F.3d at 1099.

### III.    THE ALJ'S FINDINGS

At step one, the ALJ found that Ms. Walton had not performed substantial gainful activity between her alleged onset date, September 15, 2002, and her date last insured, December 31, 2007.[3] Tr. 20. At step two, the ALJ found that Ms. Walton had the following severe impairments: post myocardial infarction with angioplasty and stenting, April 2006; adjustment disorder; depression; anxiety disorder; headaches; and left shoulder bursitis. *Id.* At step three, the ALJ found that Ms. Walton did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. Tr. 21. The ALJ assessed Ms. Walton's RFC as:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except: she has a limited ability to read and write; she cannot perform mental calculations of numbers, but can perform calculations of numbers with a calculator; she should never climb ropes, ladders, or scaffolds; she can occasionally climb ramps and stairs; she can occasionally stoop, kneel, crouch, and crawl; she cannot perform overhead reaching; she is able to understand, remember, and carry out short simple instructions and routine tasks; she cannot have interaction with the general public; and she can have only superficial interaction with coworkers and supervisors.

---

[3] Ms. Walton *must* establish disability on or before her date last insured. *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995)).

Tr. 23. At step four, the ALJ found Ms. Walton capable of performing her past relevant work as an office helper. Tr. 26. The ALJ therefore concluded that Ms. Walton was not disabled through her date last insured. Tr. 27.

## IV.    STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r for Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r of the Soc. Sec. Admin*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* If reversible error arises, the court retains discretion to remand for further proceedings or the immediate award of benefits. *Harmon v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000), *cert. denied*, 531 U.S. 1038.

## V.    ANALYSIS

Ms. Walton argues that the ALJ erred by: (1) failing to adequately develop the record; (2) improperly classifying some of her impairments as not severe at step two; (3) improperly rejecting her subjective symptom testimony; (4) formulating an RFC that did not account for all of her limitations; and (5) relying on the testimony of a VE that was premised on a legally deficient hypothetical.

## A.    Duty to Develop the Record

Ms. Walton argues that the ALJ failed to adequately develop the record regarding her non-severe physical and mental disorders. Pl.'s Br at 30–32. It is the claimant's duty to provide

FINDINGS AND RECOMMENDATION, Page 5

medical evidence showing the existence, severity, and duration of one or more impairments. 20 C.F.R. § 404.1512(c); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). An ALJ may not reject a claimant's claim for benefits simply because there is no objective evidence of a disability. *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001). Instead, if the evidence in the record is ambiguous or insufficient for proper evaluation of the claim, the ALJ has a duty to develop the record further. *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001). An ALJ may satisfy this duty by subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record. *Tonapetyan*, 242 F.3d at 1150. This duty is heightened when a claimant is not represented by counsel or suffers from a mental illness rendering him or her unable to protect his or her own interests. *See id.*; *Higbee v. Sullivan*, 975 F.2d 558, 562 (9th Cir. 1992).

Ms. Walton claims that the ALJ improperly ignored ambiguous evidence of mental impairments arising from demyelinating disease or stroke. Pl.'s Br. at 31. She also claims that the ALJ erred by not ordering a consultative examination to supplement the evidence of her physical impairments. *Id.* at 30, 32 (listing arthritis, venous thrombosis, arthralgia, sleep disorder, degenerative disc disease, and scoliosis).

On August 2, 2006, Ms. Walton's brain was imaged using MRI, which revealed lesions "suspicious for a demyelinating disease." Tr. 347. The lesions again were imaged on December 21, 2006, but they were unchanged. Tr. 345.

Ms. Walton's argument is unavailing because the record on this condition was sufficiently developed. The record included both the 2006 MRIs, as well as information from a

FINDINGS AND RECOMMENDATION, Page 6

repeat procedure in 2009. Tr. 716–17. The radiologist, Dr. Bookstein, noted that

"[d]emyelinating pathology is certainly a diagnostic consideration," but did not offer a

conclusive diagnosis. Tr. 716. Ms. Walton subsequently saw a neurologist, Dr. Stigler, who

compared the 2009 MRI to the 2006 MRIs and noted "no change," concluding that the observed

abnormalities "are probably a product of her lipid disorder and previous tobacco abuse."

Tr. 715. Further, Dr. Stigler ruled out "less common causes of white matter disease" and opined

that Ms. Walton's "complaints are a product of stress/depression." Tr. 733–35. Not only did

Dr. Stigler offer an unambiguous assessment of Ms. Walton's MRI results, but he reported the

results of the very neurological examination that Ms. Walton argues the ALJ should have sought.

As such, the record of Ms. Walton's suspected demyelinating disease is neither ambiguous nor

incomplete. *See Mayes*, 276 F.3d at 459–60.[4]

  Even if the ALJ failed to order a consultative examination, any error resulting from that

omission would be harmless. *Cf. McLeod v. Astrue*, 640 F.3d 881, 886 (9th Cir. 2011) (applying

a harmless error analysis when the record was found to be insufficient). By Ms. Walton's own

admission, she suffered from cognitive deficits after her 2006 myocardial infarction, which she

attributes, inconsistently, to a demyelinating condition or ischemia. Pl.'s Br. at 31. The

cognitive impairments secondary to any demyelinating condition, and not the condition itself,

---

[4] In evidence submitted to the Appeals Council, Dr. Stigler conclusively rules out multiple sclerosis, a demyelinating condition, based on a spinal tap. Tr. 785. He also reaffirms his previous opinion that her abnormal MRI is a product of vascular disease, which "has been stable." Tr. 805. Although the ALJ did not have the benefit of this new evidence, it supports a finding that the record was unambiguous and complete. *See Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012) (citing *Tackett*, 180 F.3d at 1097–98) ("[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence.").

must be incorporated into the RFC prepared for steps four and five of the sequential disability analysis. *See, e.g., Bayliss*, 427 F.3d 1211, 1217 (9th Cir. 2005) (holding an ALJ must include all limitations supported by substantial evidence into a VE hypothetical); 20 C.F.R. § 404.1545(a)(1–2) ("We will assess your residual functional capacity based on all the relevant evidence in your case record[,] . . . including your medically determinable impairments that are not 'severe.'"). As is discussed below, the RFC finding and VE hypothetical contain all limitations supported by substantial evidence in the record.

Ms. Walton also argues that the ALJ erred in failing to develop the record regarding her numerous physical impairments. Although she cites to medical evidence in the record that notes these impairments, she offers no explanation as to how this evidence was ambiguous or insufficient. *See, e.g.*, Pl.'s Br. at 30–32. The evidence documenting Ms. Walton's complaints of knee, hip, and back pain, arising from a variety of alleged conditions, and arthritis show that her complaints arose after her date last insured, December 31, 2007.[5] Tr. 20. In *McLeod*, the Ninth Circuit found the record inadequate when it did not contain a copy of the claimant's VE disability rating, which must be considered by an ALJ. *McLeod*, 640 F.3d at 885–86. The present case embodies the opposite instance; here, the evidence Ms. Walton argues demonstrates the insufficiency of the record is not probative because it relates to conditions arising after her

---

[5] On October 27, 2010, Ms. Walton reported that the onset of her knee pain was September 29, 2010, after undergoing knee surgery. Tr. 852; *see also* Tr. 702 (reporting on January 27, 2010, left knee pain "for [the] past few months"). On July 9, 2009, Ms. Walton reported bi-lateral hip pain arising during the preceding six weeks. Tr. 519; *see also* Tr. 773 (noting on February 24, 2010, resolution of the pain in the right hip and decreased pain in the left hip through treatment). On November 8, 2008, Ms. Walton reported stiffness in her left index finger six months after an accident with her dog; Dr. Hisham Bismar noted that Ms. Walton's other fingers had a normal range of motion. Tr. 752–53. On January 27, 2010, Ms. Walton reported experiencing "back pain for the past few months." Tr. 702; *see also* Tr. 519 (reporting on July 9, 2009, flaring back pain).

date last insured. Moreover, physicians reviewing Ms. Walton's medical evidence opined that they could not order a consultative examination, despite any potential probative value, because the opinions were rendered more than eight months after Ms. Walton's date last insured.[6] *See* Tr. 377, 390, 395–96.

After a sleep study, Ms. Walton was diagnosed with "mild sleep apnea" on October 13, 2006. Tr. 287–88. She testified at the hearing that a continuous positive airway pressure ("CPAP") machine helped "as long as [she kept] it on [her] face." Tr. 44. The evidence in the record is not ambiguous; although Ms. Walton was diagnosed with sleep apnea, she testified that it was effectively controlled when she complied with recommended treatment.

In sum, the record was neither ambiguous nor incomplete; thus, the ALJ's duty to develop the record should not have been triggered.

**B.    Severity at Step Two**

Ms. Walton also argues that the ALJ erred by improperly classifying several physical and mental disorders as not severe. Pl.'s Br. at 25. At step two, an ALJ determines whether a claimant has a medically determinable severe impairment or combination of impairments. 20

---

[6] In August 2008, Martin Kehrli, M.D., and Robert Henry, Ph.D., reviewed Ms. Walton's medical evidence, and in October 2008, Sharon Eder, M.D., and Joshua Boyd, Ph.D., conducted a similar review. Tr. 376–90, 395–96. Although each reviewing physician noted the medical evidence in the record and found Ms. Walton suffered from medically determinable impairments, they could not formulate an RFC or mental RFC because the evidence was insufficient to permit them to make that determination. Tr. 377, 390, 395–96. Dr. Kehrli and Dr. Eder suggested that a consultative examination would be needed "to address [Ms. Walton's] current status." Tr. 377, 395. The reviewing physicians tempered their recommendation, however, by recognizing that it was several months past Ms. Walton's date last insured. Tr. 377 (eight months); Tr. 395 (ten months). Dr. Eder noted that a consultative examination would only assess Ms. Walton's "current status," which would not be probative "due to [her] expired [date last insured] and no Title XVI [SSI] claim." Tr. 395; *see also* 20 C.F.R. § 404.1519b(c) (prohibiting a consultative examination when a claimant's "insured status expired in the past and there is no possibility of establishing an onset date prior to the date [his or her] insured status expired").

FINDINGS AND RECOMMENDATION, Page 9

C.F.R. § 404.1520. An impairment is not severe if it does not significantly limit the claimant's ability to do basic work activities. 20 C.F.R. § 404.1521; *see also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005). The step two threshold is low; it is a "de minimus screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

At step two, the ALJ found that Ms. Walton had the following severe impairments: "post myocardial infarction with angioplasty and stenting April 2006; adjustment disorder; depression; anxiety disorder; headaches; and left shoulder bursitis." Tr. 20. The ALJ then noted that Ms. Walton has "been treated or evaluated for other symptoms and complaints that appear throughout the record," including "obesity, arthritis in left hand, early degenerative joint disease in the left knee, possible demyelinating disease of the brain, reflux esophagitis, and left eye cataract." Tr. 21. The ALJ did not consider these impairments severe because they "caused only transient and mild symptoms and limitations, are well controlled with treatment, or are otherwise not adequately supported by the medical evidence." *Id.*

Ms. Walton cites a litany of impairments that she claims the ALJ improperly found not severe, including "right and left shoulder arthritis . . . [a]rthritis of the left knee, grade III and venous thrombosis . . . arthralgia of hip or thigh and trochanteric bursitis . . . osteoarthritis of the hands and wrist . . . sleep apnea . . . degenerative disk disease of the back and scoliosis . . . [and] suspicion of demyelinating disease and/or ischemic disease." Pl.'s Br. at 25 (citations omitted). She argues that these impairments "more than slightly impact her ability to perform work-related activities beyond" those found in the RFC. Pl.'s Reply at 2.

Here, the ALJ resolved step two in Ms. Walton's favor by identifying several impairments as medically severe. *See* Tr. 20–21. As such, the disability determination did not

FINDINGS AND RECOMMENDATION, Page 10

end at step two. Tr. 21–27. Any error made by the ALJ in failing to designate the omitted

impairments as severe did not prejudice Ms. Walton at step two. *See Burch v. Barnhart*, 400

F.3d 676, 682 (9th Cir. 2005) (any error in omitting an impairment from the severe impairments

identified at step two was harmless where step two was resolved in claimant's favor).

      After a claimant establishes one or more severe impairments, in the remaining steps, an

ALJ must consider all evidence of functional limitations imposed by medically determinable

impairments, including any that were not identified as severe at step two. 20 C.F.R. § 404.1523;

SSR 96–8p, *available at* 1996 WL 374184. Accordingly, the ALJ was required to consider all

evidence of functional limitations attributable to the non-severe impairments in the remaining

steps of his decision. As will be discussed below, the ALJ incorporated those functional

limitations supported by substantial evidence into Ms. Walton's RFC. As such, any error by the

ALJ in failing to designate Ms. Walton's impairments should be considered harmless. *See, e.g.,*

*Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (failure to list an impairment as severe at step

two was harmless error where the ALJ considered the functional limitations posed by that

impairment later in the decision); *Mondragon v. Astrue*, 364 F. App'x 346, 348 (9th Cir. 2010)

("Any alleged error at step two was harmless because step two was decided in [claimant]'s favor

with regard to other ailments.").

## C.    Plaintiff's Credibility

      Ms. Walton also argues that the ALJ erred by rejecting her subjective symptom testimony

without offering clear and convincing reasons for doing so. Pl.'s Br. at 25–29. The Ninth

Circuit has developed a two-step process for evaluating the credibility of a claimant's own

testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*,

572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has

presented objective medical evidence of an underlying impairment which could reasonably be

expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028,

1036 (9th Cir. 2007). When doing so, the claimant "need not show that her impairment could

reasonably be expected to cause the severity of the symptom she has alleged; she need only show

that it could reasonably have caused some degree of the symptom." *Smolen*, 80 F.3d at 1282.

Second, "if the claimant meets the first test, and there is no evidence of malingering, 'the

ALJ can reject the claimant's testimony about the severity of her symptoms only by offering

specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting

*Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he

must state which pain testimony is not credible and what evidence suggests the complaints are

not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be

"sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily

discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing

*Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (*en banc*)).

The ALJ may consider objective medical evidence and the claimant's treatment history,

as well as the claimant's daily activities, work record, and the observations of physicians and

third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d

at 1284. The Commissioner recommends assessing the claimant's daily activities; the location,

duration, frequency, and intensity of the individual's pain or other symptoms; factors that

precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any

medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other

than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96-7p, *available at* 1996 WL 374186.

Further, the Ninth Circuit has said that an ALJ also "may consider . . . ordinary techniques of credibility evaluation, such as the reputation for lying, prior inconsistent statements concerning the symptoms, . . . other testimony by the claimant that appears less than candid [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment[.]" *Smolen*, 80 F.3d at 1284.

In written reports and testimony, Ms. Walton highlights both physical and mental impairments as barriers to her ability to work, primarily alleging debilitating pain and anxiety. *See* Tr. 39, 50–51. Ms. Walton describes her pain as secondary to injuries to her left shoulder, knee, lower back, feet, and hands. *See* Tr. 188, 217. Her myocardial infarction, which occurred on April 4, 2006, was the genesis of many of Ms. Walton's mental impairments, including reduced stamina. Tr. 35–36, 188, 240–242. Ms. Walton also mentions that some of her impairments preceded the myocardial infarction, including migraine headaches, which have occurred since the 1970s, and depression. Tr. 41, 46.

Physically, Ms. Walton reports that she can sit for 20 minutes and stand for 45 minutes; however, in total, she can sit, stand, and walk less than two hours each in an eight hour day. Tr. 192; *see also* Tr. 54. As such, she must constantly shift between sitting, standing, and walking. Tr. 193. She also notes substantial environmental restrictions that exacerbate her pre-existing symptoms. *See* Tr. 195. Further, Ms. Walton testifies that she has trouble sleeping, which results in an inability to concentrate. Tr. 43, 47.

Mentally, Ms. Walton notes that she has a very poor short-term memory and an inability to deal with stress. Tr. 39–40, 196. When in a public place, Ms. Walton reports that she becomes nervous, occasionally suffering minor memory problems as a result. Tr. 216. She also reports these feelings when socializing with her friends. Tr. 217.

Generally, the ALJ found that Ms. Walton's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Ms. Walton's] statements concerning the intensity persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC]." Tr. 23–24. More specifically, the ALJ credited some of Ms. Walton's subjective testimony, finding that she "would experience pain with prolonged periods of walking and/or standing, would have difficulty working around others, and difficulty concentrating for long periods of time." Tr. 26. However, the ALJ rejected Ms. Walton's "allegations that she is incapable of all work activity . . . because of significant inconsistencies in the record as a whole." *Id.* The ALJ offered these specific reasons for finding Ms. Walton only partially credible: (1) inconsistent activities of daily living; (2) conservative or infrequent treatment; (3) effective treatment; and (4) allegations inconsistent with the medical evidence.

### 1.    Activities of Daily Living

The ALJ found that Ms. Walton's activities of daily living "suggest a level of functioning greater than what she has alleged in her application and testimony." Tr. 25. Daily activities can form the basis of an adverse credibility finding where the claimant's activities either contradict his or her other testimony or meet the threshold for transferable work skills. *See Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). A claimant, however, need not be utterly incapacitated to

receive disability benefits, and sporadic completion of minimal activities is insufficient to

support a negative credibility finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001);

*see also Reddick v. Chater*, 157 F.3d 715, 722–23 (9th Cir. 1998) (requiring the level of activity

to be inconsistent with the claimant's claimed limitations to be relevant to his or her credibility).

      Ms. Walton testified that she performs approximately five hours per week of clerical

work related to the operation of her husband's truck, which includes paying bills and balancing a

checkbook. Tr. 38. She is also able to care for her dogs, cats, and birds. Tr. 54, 154; *see also*

Tr. 162. Physically, Ms. Walton testified that she is able to manage all the necessary household

chores, including shopping and paying bills. Tr. 153, 200. She is also able to let her pets in and

out of the house and take her dog for a walk. Tr. 54. Most significantly, Ms. Walton must

perform all of these tasks without the support of her husband, who has been working in Colorado

since March 2008. Tr. 37, 201. These activities contradict Ms. Walton's testimony that her

symptoms substantially limit her functioning. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574

F.3d 685, 693 (9th Cir. 2009). Further, the ALJ properly inferred that Ms. Walton's sole

responsibility for and performance of household chores, as necessitated by her husband's

absence, indicated that she was less disabled than alleged. *See* Tr. 222 ("[A]ll of the

responsibilities of the repairs of trying to keep the house up is on my shoulders."); *see also*

*Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (affirming an ALJ's credibility

finding, in part, because the claimant's activities demonstrated he "was not as physically limited

as he purported to be").

      Ms. Walton appears to agree with the ALJ's finding, stating: "the activities . . . the ALJ

listed comport with the lifestyle of a relatively healthy individual." Pl.'s Br. at 28. Although

FINDINGS AND RECOMMENDATION, Page 15

Ms. Walton further argues that the ALJ "misconstrued [her] testimony about working, [and] ignored medical evidence," she does not argue, in her opening brief or reply brief, how her activities of daily living do not contradict her reported symptoms. *Id.* at 28–29.

The ALJ noted that Ms. Walton "perform[s] clerical work five hours a week at her family's business." Tr. 25. Although Ms. Walton did testify to performing such work, she noted that her work takes five hours because she "can't concentrate anymore." Tr. 38. She later testified that a significant barrier to working would be her ability to concentrate. Tr. 50–51. Even assuming the ALJ's reliance on Ms. Walton's limited work was error, it was harmless because the ALJ's credibility finding was still supported by substantial evidence. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). Moreover, it appears as though the ALJ credited Ms. Walton's testimony regarding her ability to concentrate by limiting her to simple, routine tasks. *See* Tr. 26.

### 2.    Conservative or Infrequent Treatment

The ALJ found that despite Ms. Walton's "numerous subjective complaints," she "has received only conservative and routine treatment for her mental impairments." Tr. 25. An ALJ may consider evidence of conservative treatment in discounting testimony regarding the severity of symptoms. *See Parra v. Astrue*, 481 F.3d 742, 750–751 (9th Cir. 2007); *Phillips v. Astrue*, CV-10-06367-AC, 2012 WL 1232005, at *4 (D. Or. Feb. 2, 2012), *adopted by* 2012 WL 1232419 (D. Or. Apr. 11, 2012) (conservative treatment was "a wrist splint for work and rest and Tylenol"). *Cf. Meanel*, 172 F.3d at 1114 (rejecting subjective pain complaints where petitioner's "claim that she experienced pain approaching the highest level imaginable was inconsistent with the 'minimal, conservative treatment' that she received") (quotations and citation omitted). An

ALJ may also consider a claimant's inconsistent or non-existent reporting of symptoms when making a credibility assessment. *See Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006).

The ALJ noted that since Ms. Walton's heart attack, which precipitated her mental impairments, she has sought mental health treatment only once. Tr. 25. The ALJ contrasted Ms. Walton's limited attempts to obtain treatment with her debilitating allegations of mental impairment. *Id.*

Ms. Walton relies on *Nguyen v. Chater*, 100 F.3d 1462 (9th Cir. 1996), and several other cases from outside the Ninth Circuit, in arguing that the ALJ erred by faulting her for not seeking psychiatric treatment. Pl.'s Reply at 4–5.[7] In *Nguyen*, an ALJ discounted the opinion of a physician's diagnosis of depression because the claimant had not sought treatment for the disease. *Nguyen*, 100 F.3d at 1465. The Ninth Circuit reversed, holding that an ALJ may not draw a negative inference from a claimant's failure to seek treatment when he or she suffers from a condition where "those afflicted often do not recognize that their condition reflects a potentially serious mental illness." *Id.* (citation omitted). The court noted that "'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'" *Id.* (quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)).

---

[7] In Ms. Walton's opening brief, she challenged, at most, two of the reasons offered by the ALJ for finding her not credible: (1) her testimony's inconsistency with the medical evidence; and (2) her inconsistent activities of daily living. Pl.'s Br. at 26–29. The Commissioner noted this and argued that the unchallenged reasons provided substantial evidence for discrediting Ms. Walton's testimony. *See* Def.'s Resp. at 4. Finally, Ms. Walton, in her reply brief, addresses some of the ALJ's other reasons, arguing that they are insufficient and erroneous. Pl.'s Reply at 4-6. Generally, issues raised for the first time in a reply brief are waived. *See United States v. Wright*, 215 F.3d 1020, 1030 n.3 (9th Cir. 2000) (citations omitted). However, the Court addresses each of them, nonetheless, and their addition to the analysis does not change the outcome on this issue.

Ms. Walton had a heart attack in 2006 that she alleges precipitated her anxiety and deficits in memory. Tr. 196–97. Before the heart attack, Ms. Walton twice saw a psychiatrist who prescribed her two different antidepressant medications. Tr. 45. A primary care physician discontinued Ms. Walton's use of these medications, but another primary care physician, Dr. Wachsmuth, re-prescribed the antidepressants. *Id.* In September 2006, Ms. Walton attended a counseling session, but she did not return because she did not like the counselor, who she felt was judging her. Tr. 45–46.

The case here is distinguishable from *Nguyen.* The *Nguyen* court recognized that a person who suffers from mental illness "often [does] not recognize that [his or her] condition reflects a potentially serious mental illness." *Nguyen,* 100 F.3d at 1465. In other words, a person should not be faulted for failing to realize that the symptoms they live with each day are consistent with a mental illness. Because Ms. Walton alleges that her mental impairments were secondary effects from a heart attack, she cannot also argue that she was unaware something was wrong. Ms. Walton had knowledge that she suffered a mental impairment because she described a discrete moment when her mental functioning changed. As such, it was not improper for the ALJ to infer that Ms. Walton's mental impairments were not as severe as alleged because she failed to consistently seek mental health care.

Although Ms. Walton does not argue this, she did offer the ALJ a reason for failing to seek counseling. She testified that she is uncomfortable revealing her problems to third-parties, and she noted that she saw a counselor once but felt judged. Tr. 46. Ms. Walton's discomfort with that particular counselor does not explain why, in the six years between her heart attack and the hearing, she did not seek out further mental health treatment, which was recommended by

her physicians. Tr. 46. Moreover, on August 22, 2006, Ms. Walton reported that she was doing well, which she attributed to the antidepressant she was taking. Tr. 292. As such, the ALJ did not err in relying on evidence of Ms. Walton's receipt of conservative treatment.

Similarly, despite Ms. Walton's allegations that she is unable to manipulate objects with her hands because of arthritis, she rejected surgical and non-surgical treatment options in favor of over-the-counter anti-inflammatories and a referral to a physical therapist for range of motion exercises. Tr. 753.

### 3.     Effective Control of Symptoms with Treatment

The ALJ also found that Ms. Walton's conditions were effectively controlled by medication. Tr. 24–25. A claimant's favorable response to conservative or routine treatment may be cited by an ALJ in making an adverse credibility finding. *See Tommasetti*, 533 F.3d at 1040.

Ms. Walton cites 20 C.F.R. § 1530 and SSR 82-59 in arguing that the ALJ was not entitled to consider evidence of effective treatment without following a specific procedure. *See* Pl.'s Reply at 6–7. The ALJ, however, did not deny Ms. Walton benefits because she failed to comply with prescribed treatment; the ALJ used this evidence to find her not credible. The regulation and ruling cited by Ms. Walton is applicable only if a claimant is already receiving benefits or would be eligible for benefits. *See* 20 C.F.R. § 404.1530(a); SSR 82-59, *available at* 1982 WL 31384. This regulation prevents a claimant from being found disabled *solely* by virtue of a treatable condition. *See* SSR 82-59, *available at* 1982 WL 31384 ("An individual who would otherwise be found to be under a disability, but who fails without justifiable cause to follow treatment prescribed by a treating source which . . . can be expected to restore the

FINDINGS AND RECOMMENDATION, Page 19

individual's ability to work, cannot by virtue of such 'failure' be found to be under a disability."). Further, in *Tommasetti*, the Ninth Circuit did not reference the regulation when affirming the ALJ's reliance on effective treatment to make a negative credibility finding. *See Tommasetti*, 533 F.3d at 1040.

The record supports the ALJ's conclusion that Ms. Walton's symptoms were effectively controlled by treatment. She testified that her heart problems were effectively controlled with medication. Tr. 39. Further, Ms. Walton reported on several occasions that medication controlled her depression. *See, e.g.*, Tr. 292, 309–10, 726. Barbara Gould, a licensed social worker, found that Ms. Walton's migraine headaches were triggered by caffeine, from which Ms. Walton was encouraged to abstain. Tr. 711.

Ms. Walton argues that the ALJ ignored "psychosocial factors of anxiety and depression [that] escalate her heart condition." Pl.'s Br. at 28. Ms. Walton cites to medical notes from April 2006, shortly after her heart attack, that record increased symptoms from anxiety and depression. Tr. 354–55. By August 2008, however, Ms. Walton reported that she was doing well "largely due to the Wellbutrin." Tr. 292. Considered with Ms. Walton's failure to seek less conservative treatment, the ALJ did not err in considering that her symptoms were effectively treated.

### 4.    Objective Medical Evidence

The ALJ also found that Ms. Walton's allegations were not supported by the objective medical evidence. Tr. 24–25. A lack of objective medical evidence, standing alone, may not serve as a clear and convincing reason to discredit the claimant's credibility when the ALJ has already determined that the claimant's impairments could produce some of the symptoms

FINDINGS AND RECOMMENDATION, Page 20

alleged. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citation omitted) ("[T]he medical evidence is still a relevant factor in determining the severity of the claimant's [symptoms]."); *Reddick*, 157 F.3d at 722. Here, however, the ALJ has already offered three legally sufficient reasons for discounting Ms. Walton's testimony. Therefore, the ALJ's reliance on the objective medical evidence was not legal error.

The ALJ acknowledged Dr. Wachsmuth's diagnoses of depression and anxiety disorder, but the ALJ found that the medical evidence supporting those diagnoses did not support the severity of Ms. Walton's alleged symptoms. Tr. 24. During a January 2010 psychiatric evaluation, Ms. Gould found that Ms. Walton had a Global Assessment of Function ("GAF") score of 60 and a last highest GAF score of 70.[8] Tr. 711. Further, Dr. Wachsmuth noted that some of Ms. Walton's anxiety was the result of resolved situation factors. Tr. 702–03.

GAF scores cannot be dispositive, but they "are nonetheless relevant." *Graham v. Astrue*, 385 F. App'x 704, 706 (9th Cir. 2010) (citing *Rollins*, 261 F.3d at 857). The GAF scores assessed by Ms. Gould correspond to "moderate difficulty in social, occupational, or school functioning," and "some difficulty in social, occupational, or school functioning." *See American Psychiatric Ass'n Diagnostic & Statistical Manual of Mental Disorders* 34 (4th ed. 2000, text revision) (hereinafter *DSM-IV*). This classification of Ms. Walton's functioning contradicts her allegations of total disability. Moreover, the GAF assigned on January 20, 2010, is supported by Ms. Gould's treatment notes, which document minor subjective findings. *See* Tr. 723–25.

---

[8] "Clinicians use a GAF to rate the psychological, social, and occupational functioning of a patient. The scale does not evaluate impairments caused by psychological or environmental factors." *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 598 n.1 (9th Cir. 1999).

Generally, Ms. Walton argues that the ALJ's findings are based on a "sheer disbelief" of her alleged symptoms. Pl.'s Br. at 26, 29. There is no evidence, however, that the ALJ relied on "sheer disbelief"; indeed, as discussed above, the ALJ offered several acceptable reasons for finding Ms. Walton only partially credible. Ms. Walton also argues that it is error for this Court to uphold the Commissioner's decision "if there is more than one rational conclusion to be made regarding Plaintiff's symptoms being less severe than the medical evidence suggests." Pl.'s Reply at 2–3. This statement is at odds with Ninth Circuit law; this Court must uphold an ALJ's reasonable interpretation of the evidence, even if there are reasonable alternative interpretations. *See Rollins*, 261 F.3d at 857 (citation omitted).

In sum, the ALJ gave clear and convincing reasons supported by substantial evidence for finding Ms. Walton not credible; the ALJ's credibility finding should be affirmed.

**D.    RFC**

Ms. Walton also argues that the ALJ erred in formulating her RFC. Pl.'s Br. at 33–34. The RFC is defined as the most that a claimant can do despite his or her limitations. 20 C.F.R. § 404.1545(a)(1). In determining the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe; the ALJ evaluates "all of the relevant medical and other evidence," as well as a claimant's testimony, in making this assessment. SSR 96-8p, *available at* 1996 WL 374184; 20 C.F.R. § 404.1545(a)(1); *see also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). Limitations supported by substantial evidence in the record must be incorporated into the RFC. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1164–65 (9th Cir. 2001).

Ms. Walton first argues that the ALJ erred by failing to discuss whether she could perform work "on a 'regular and continuing basis' for 8 hours a day, 5 days a week." Pl.'s Br. at 33. Ms. Walton argues that the ALJ failed to comply with SSR 96-8p, which defines the RFC as a claimant's "ability to do sustained work-related physical and mental activities . . . on a regular and continuing basis." *See* SSR 96-8p, *available at* 1996 WL 374184 ("A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."). Although, as Ms. Walton argues, the ALJ did not make an express finding of Ms. Walton's ability to work on a regular and continuing basis, the ALJ was not required to make an explicit finding because SSR 96-8p "essentially announces an understanding of the term 'regular and continuing basis' consistent with the ALJ's findings." *See Montalvo v. Astrue*, 237 F. App'x 259, 262 (9th Cir. 2007); *see also Chamberlin v. Astrue*, 3:11-CV-01059-SI, 2013 WL 550514, at *12 (D. Or. Feb. 11, 2013); *Oliver v. Astrue*, 3:12-CV-00135-AC, 2013 WL 1180885 (D. Or. Mar. 4, 2013), *adopted sub nom.*, 2013 WL 1180949 (D. Or. Mar. 20, 2013). Further, Ms. Walton does not point to any evidence in the record, which has not been properly discounted, that belies the ALJ's conclusion regarding her ability to perform sustained work. Indeed, the ALJ credited Ms. Walton's testimony that she would experience pain from prolonged periods of walking or standing and had difficulty concentrating for extended periods of time. Tr. 26.

Ms. Walton also argues that the ALJ's restriction in the RFC to unskilled work "is contrary to case law." Pl.'s Br. at 33–34. Although, in some cases, Ms. Walton may be correct, a limitation to unskilled work is only erroneous when it does not account for limitations supported by substantial evidence in the record. *See, e.g., Bayliss*, 427 F.3d at 1217. An ALJ must consider the genesis of the opinion that a claimant is so limited and incorporate those

underlying functional limitations into the RFC. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (citations omitted) ("[A]n ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony."). Ms. Walton's argument, devoid of citations to the record, appears to be premised on an assumption that, as a matter of law, a restriction to unskilled work can never account for mental limitations. This assumption is incorrect. *See id.* Further, this Court's review of the record reveals that the ALJ incorporated the mental limitations supported by substantial evidence into the RFC.

The RFC includes the following mental restrictions: a limited ability to read and write; mental calculations must be performed with a calculator; short, simple instructions and routine tasks; no interaction with the general public; and only superficial interaction with coworkers and supervisors. Tr. 23. The ALJ partially credited Ms. Walton's testimony, finding she "would have difficult working with others and difficulty concentrating for long periods of time." Tr. 26. These restrictions are consistent with Ms. Walton's partially credited testimony and a psychiatric examination, the only probative medical evidence in the record. *See Stubbs-Danielson*, 539 F.3d at 1174 (affirming the ALJ's RFC when "the assessment is consistent with restrictions identified in the medical testimony").

Ms. Gould, a licensed social worker, conducted a psychiatric evaluation of Ms. Walton on January 20, 2010, which was referenced and adopted by Ms. Walton's primary care provider, Dr. Wachsmuth. Tr. 702–03, 707–11. Despite Ms. Walton's self-reported poor concentration and memory, she reported enjoying puzzles, gambling, and crossword puzzles. Tr. 709. Although Ms. Walton reported that she was anxious throughout the examination, Ms. Gould

FINDINGS AND RECOMMENDATION, Page 24

noted Ms. Walton "looks relaxed and shows a broad and appropriate affect. She is fully oriented and very cooperative. Her speech is fluid, focused, well organized, and goal-directed. . . . [Her] insight and judgment appear to be fully intact." Tr. 710. In assessing a treatment plan, Ms. Gould suggested that Ms. Walton continue medical management through Dr. Wachsmuth, practice stress reduction techniques, set limits with her husband, and engage in greater self-care. Tr. 711. Ms. Gould assessed a GAF score of 60, which corresponds to "moderate difficulty in social [and] occupational functioning (e.g., few friends, conflicts with peers or co-workers)." *DSM-IV*, at 34.

The ALJ partially credited Ms. Walton's testimony, which accounts for the other limitations found in her mental RFC. Tr. 26. The ALJ found that Ms. Walton has a limited ability to read and write, and she can perform calculations only with a calculator. Tr. 23. These restrictions are taken directly from Ms. Walton's own testimony, and her limited work as a bookkeeper for her husband's truck. *See* Tr. 37–38. Ms. Walton repeatedly testified that a significant barrier to her employment is a limited ability to concentrate. *See, e.g.*, Tr. 39. 50–51. She testified that she "lose[s] interest" after concentrating on something for more than twenty minutes. Tr. 51. The ALJ thus limited Ms. Walton to "short simple instructions and routine tasks." Tr. 23.

Ms. Walton also argues that the ALJ erred by excluding limitations identified by her medical sources. Because this Court did not find that the ALJ erred in rejecting Ms. Walton's testimony and because she does not challenge the ALJ's treatment of the medical evidence, the ALJ did not err in excluding those limitations from the RFC. *See Bayliss*, 427 F.3d at 1217; *see*

FINDINGS AND RECOMMENDATION, Page 25

*also Magallanes v. Bowen*, 881 F.2d 747, 756–57 (9th Cir. 1989) (holding an ALJ may only include restrictions supported by substantial evidence).

Finally, Ms. Walton argues "[a]nd, of course, the ALJ failed to formulate a Mental RFC." Pl.'s Br. at 34. The Court is not aware of anything that requires an ALJ to formulate a separate mental RFC, particularly when the ALJ's RFC includes mental restrictions. *See* Tr. 23. Further, the record includes a psychiatric review technique completed by Dr. Robert Henry.[9] Tr. 378–90. To the extent Ms. Walton wished to raise another argument before this Court, she is reminded that the Court "will not manufacture arguments" for her. *See Greenwood v. F.A.A.*, 28 F.3d 971, 977 (9th Cir. 1994) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991)). [10]

In sum, the ALJ's RFC is based on substantial evidence and should be affirmed.

### E.    VE Testimony

Ms. Walton also argues that the ALJ erred by presenting a deficient hypothetical to the VE that did not include all of her functional limitations. Pl.'s Br. at 34–35. As this Court has affirmed the ALJ's findings, "[t]he hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record." *Bayliss*, 427 F.3d at 1217. Thus, "[t]he ALJ's reliance on testimony the VE gave in response to

---

[9] It is possible that Ms. Walton is simply reasserting her argument that the ALJ failed to incorporate her mental limitations into the RFC, an argument this Court has rejected.

[10] Ms. Walton also argues that the ALJ "failed to comply with [a] remand order . . . when determining plaintiff's RFC." Pl.'s Br. at 33. Ms. Walton only mentions this argument in a section heading. *Id.* This Court cannot locate any remand order, whether from the Appeals Council or a district court, in the record. *See, e.g.*, Tr. 1–5 (denying Ms. Walton's request for review of the ALJ's decision).

FINDINGS AND RECOMMENDATION, Page 26

the hypothetical . . . was proper." *Id.* at 1217–18 (citing *Magallanes*, 881 F.2d at 756–57).[11] The ALJ's reliance on the VE's testimony should be affirmed.

## VI.    CONCLUSION

For the reasons stated above, the Commissioner's final decision that Ms. Walton is not disabled is based on proper legal standards and is supported by substantial evidence; it should be AFFIRMED.

## VII.    SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due no later than fourteen days after the date the Findings and Recommendation is filed. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, any party may file a response within fourteen days after the date the objections are filed. Review of the Findings and Recommendation will go under advisement when the response is due or filed, whichever date is earlier.

DATED this 16th day of May, 2013.

John V. Acosta
United States Magistrate Judge

---

[11] Ms. Walton spends several pages discussing the Commissioner's burden at step five of the sequential disability evaluation process. *See* Pl.'s Reply at 8–14. The ALJ, however, found Ms. Walton not disabled at step four of the process. Tr. 26–27. As such, the burden never shifted from Ms. Walton to the Commissioner. *See Tackett*, 180 F.3d. at 1100.